**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
WESTERN DIVISION**

**In Re F. DAVID REES**
**ARKANSAS BAR ID #79238**                                                                    **PETITIONER**

**CASE NO. 4:09MC00038 BSM**

**ORDER**

Frank David Rees's petition for reinstatement to the United States District Court for the Eastern District of Arkansas (Doc. No. 1) is dismissed.

**I. FACTS**

Rees is a lawyer whose Arkansas law license was suspended by the Arkansas Supreme Court Committee on Professional Conduct (the "committee") on February 23, 2009, based on findings of misconduct in three separate cases: In Re Frank David Rees, CPC Docket No. 2006-156 (Ford); In Re Frank David Rees, CPC Docket No. 2007-021 (Mooney); and In Re Frank David Rees, CPC Docket Number 2007-031 (Papachristou). Rees was suspended for a total of 102 days, from February 23, 2009, to June 6, 2009. In *Ford*, Reese was suspended for forty-two (42) days. In *Mooney*, he was suspended for thirty (30) days to run consecutive to the forty-two (42) day suspension in *Ford*. In *Papachristou*, he was suspended for thirty (30) days to run consecutive to the thirty (30) day suspension in *Mooney*.

On February 26, 2009, Rees was directed to show cause why the United States District Court for the Eastern District of Arkansas should not impose the same discipline as that imposed by the state of Arkansas. Rees failed to respond and, on April 8, 2009, was

suspended from practicing in this court for a period of 102 days. Rees's Arkansas law license was reinstated on June 17, 2009, and he now petitions for reinstatement to practice in federal court (Doc. No. 1).

The committee's findings, which are accepted as true, indicate that Rees has engaged in a potpourri of misconduct. In *Ford*, he committed ethical misconduct by encouraging his client to deceive medical lien holders by lying about the value of his personal injury settlement.

In *Mooney*, he committed several acts of ethical misconduct in his representation of Teahna Mooney. First, Rees represented Mooney in a lawsuit against Emerson George, while concurrently representing George in another case, without informing either party. Second, Rees gave financial assistance to Mooney by providing her an apartment in his brother's building and giving his brother a lien on the proceeds of Mooney's lawsuit against George. Rees also arranged and personally guaranteed bank loans for Mooney. Third, Reese paid Mooney $1,000 to settle a sexual harassment claim she had against him, thus limiting his liability for legal malpractice, although Mooney did not have independent legal representation.

In *Papachristou*, Rees committed ethical misconduct when he represented co-defendants, Tom Papachristou and Kim Crockett, in a federal criminal case. In March 2004, Crockett entered into a cooperation agreement with the FBI and the United States Attorney to provide information against Papachristou. Rees began representing Papacrhistou in March

2004 and in June 2004, began representing Crockett in the same case, potentially endangering her immunity agreement. Rees did not inform Crockett of the potential problems his dual representation could mean for her immunity agreement.

In addition to these cases, Rees has two additional reported cases of ethical misconduct. In the case of In Re Frank David Rees, CPC Docket No. 2007-113 (Brandon), the committee cautioned and fined him $1,000 for providing $1,600 in financial assistance to a client. In the case of In Re Frank David Rees, CPC Docket No. 2008-082 (Dixon), the committee reprimanded and fined him $2,500 for having sex with a client.

## II.  LEGAL STANDARD

Federal district courts have power independent of state courts to discipline attorneys admitted to practice before the federal bench. *Matter of Discipline of Olkon*, 795 F.2d 1379, 1383 (8th Cir. 1986).  "There is no vested right in an individual to practice law. Rather there is a right in the Court to protect itself, and hence society, as an instrument of justice." *Petition of Olkon,* 605 F.Suppp. 784, 787-788 (D. Minn. 1985), *aff'd*, 795 F.2d 1379 (1968)(quoting *In re Isserman*, 345 U.S. 286, 289 (1953), *judgement set aside on other grounds*, 348 U.S. 1 (1954)).  Therefore, district courts can consider any evidence relevant to the petition for reinstatement and are not strictly bound by the state court's considerations. *In re Culpepper*, 770 F.Supp. 366, 369 (E.D. Mich. 1991).

Rule VII of the Model Federal Rules of Disciplinary Enforcement ("Disciplinary Rule(s)"), which is adopted by Local Rule 83.5, governs reinstatement and readmission of

lawyers suspended or disbarred from practicing in this federal district court. Disciplinary Rule VII.A requires an attorney suspended for more than three months to be reinstated by the district court prior to resuming practice in this court. Disciplinary Rule VII.C requires a petitioner for reinstatement to prove

> by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law before this Court and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive to the public interest.

### III. DISCUSSION

Rees's petition for reinstatement is dismissed because he has failed to show by clear and convincing evidence that he has the moral qualifications to practice in federal court and that his resumption of practice would not be detrimental to the integrity and standing of the bar, or to the administration of justice, or subversive to the public interest.

At the February 24, 2010, hearing, Charles Mooney Sr., Arlon Woodruff, Bill Bristow, and Harry Rein testified that they are attorneys who have known Rees for at least twenty years and are familiar with his character, work habits and legal ability. Each testified that Rees is a highly competent and zealous advocate. Although neither witness was familiar with the committee's findings, each testified that he was aware of no ethical behavior that would disqualify Rees from appearing in federal court. Mooney, Woodruff, and Rein testified that Rees had learned from past mistakes.

Rees's case is somewhat perplexing because each of his witnesses described him as

a zealous and very capable advocate for his clients; however, when testifying, he was an extremely poor advocate for himself. This is true because, not only did Rees fail to show any remorse for his actions, but he was extremely reluctant to acknowledge that he had done anything wrong. Indeed, his testimony seemed as if he was attempting to re-litigate the committee's findings and place the blame on others.

For instance, Rees testified that he had done absolutely nothing wrong in *Ford*, even though the committee found that Rees encouraged a client to lie to creditors by telling them that he would receive a $100,000 settlement instead of the more than $125,000 settlement that had been offered. Rees said that his office staff incorrectly prepared the settlement sheet and that the entire incident was a byproduct of a plot by jealous lawyers in Northeast Arkansas to steal his clients. Regarding *Mooney*, Rees testified that his dual representation of adverse parties was due to a filing system error. Regarding *Brandon*, he testified that he did not write the checks the committee identified as improper financial assistance. He stated that the checks were written by someone else in his office. Regarding the committee's finding in *Dixon* that he engaged in an unlawful sexual relationship with a client, he explained that four other women filed lawsuits against him alleging the same thing but these suits were a result of a conspiracy between his female clients and jealous lawyers in Northeast Arkansas. Finally, as to the *Papachristou* case where Reese was disciplined for representing opposing parties in a federal criminal investigation, Rees said this type of thing happens all the time.

During Rees's testimony, his lawyers unsuccessfully attempted to rein him in and tried to get him to explain how he has learned from his mistakes. Rees, however, disregarded legal counsel and made excuses, going so far as to hold himself out as a victim. In doing so, Rees failed to show that he understands that his actions are unacceptable and thus failed to show by clear and convincing evidence that he has the moral qualifications to practice law in federal court and that his resumption of practice would not be detrimental to the integrity and standing of the bar, or to the administration of justice, or subversive to the public interest.

For these reasons, Rees petition for reinstatement is dismissed.

## IV.  ATTORNEY'S FEES AND COSTS

Disciplinary Rule VII.E requires lawyers petitioning for reinstatement to deposit $5,000 in advance to pay the costs of the reinstatement proceeding. Rees complied with the rule and the Clerk is now holding the $5,000 deposited by Rees.

Bruce Wilson, a lawyer from Clarksville, Arkansas, was appointed to represent the interests of the court in Rees's reinstatement proceeding. He now moves for payment of attorney's fees and costs totaling $7,180 (Doc. No. 6). Rees objects, contending, among other things, that Wilson's costs for three round trips from Clarksville to Little Rock are unreasonable because those costs would have been averted had the court appointed a Little Rock lawyer (Doc. No. 7).

Rees's argument that the appointment of a Little Rock lawyer would have held down

expenses is incorrect because the hourly rates of lawyers in Little Rock with similar experience and competence as Wilson range from double to triple the $120 hourly rate charged by Wilson. Further, except for the three hours billed by Wilson on February 18, 2010, for traveling to Little Rock to meet with Stark Ligon, the time Wilson spent working on this case was reasonable. The February 18, meeting with Ligon was unreasonable because Wilson had a telephone conference with Ligon on October 8, 2009, and traveled to Little Rock to meet with him on October 15, 2009, and the very minimal information provided by Ligon at the hearing could have been determined on either of those days. Further, had Wilson needed additional information, he could have simply called Ligon.

For these reasons, Wilson is awarded $6,820 in attorney's fees, with $5,000 to be paid from the funds deposited by Rees and the remaining $1,820 to be paid from the court's Model Rules of Disciplinary Enforcement Rule 11 account.

## V. CONCLUSION

For the reasons set forth above, Frank David Rees's petition for reinstatement (Doc. No. 1) is dismissed and Bruce Wilson is awarded $6,820 in attorney's fees, with $5,000 to be paid from the funds deposited by Rees and the remaining $1,820 to be paid from the court's Model Rules of Disciplinary Enforcement Rule 11 account.

IT IS SO ORDERED THIS 5th day of April, 2010.

_____
UNITED STATES DISTRICT JUDGE